# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Tisha Franklin, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Del Monte Foods, Inc.,<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tisha Franklin ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Del Monte Foods, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

## NATURE OF THE ACTION

1. Defendant formulates, manufactures, advertises, and/or sells its "Del Monte" brand in "100% Juice" fruit bowls and canned fruits (the "Products")[1] throughout the United

---

[1] The fruit bowls and canned fruit include Defendant's Del Monte brand: "Mango Pineapple in 100% Juice, Fruit Cup® Snacks"; "Diced Mangos in 100% Juice, Fruit Cup® Snacks"; "Diced Pears in 100% Juice, Fruit Cup® Snacks"; "Pear Halves in 100% Juice"; "Canned Gold Pineapple Slices in 100% Pineapple Juice"; "Canned Gold Pineapple Chunks in 100% Pineapple Juice"; "Canned Gold Pineapple Tidbits in 100% Pineapple Juice"; "Mango Pineapple in 100% Juice, Fruit Cup® Snacks"; "Pineapple Tidbits Fruit Cup® Snacks - 100% Juice"; "Tropical Fruit in 100% Juice, Fruit Cup® Snacks"; "Pineapple in 100% Coconut Flavored Juice, Fruit Cup® Snacks"; "Pineapple Tidbits in 100% Juice"; "Pineapple Chunks in 100% Juice"; "Mixed Fruit in 100% Juice, Fruit Cup® Snacks"; "Cherry Mixed Fruit in 100% Juice Fruit Cup® Snacks"; "Chunky Mixed Fruit in 100% Juice Fruit Cocktail in 100% Juice"; "Citrus Salad in 100% Juice"; "Red Grapefruit in 100% Juice"; "Sliced Yellow Cling Peaches in 100% Juice"; "Diced Peaches in 100% Juice, Fruit Cup® Snacks."

States, including New York. Defendant markets its Products in a systematically misleading manner by conspicuously misrepresenting on the labels of the Products that their respective fruits are contained in "100% Juice." Defendant reinforces these misrepresentations by adding vignettes and display windows that purport to show the fruits and the juices that comprise the Products.

2. Unbeknown to consumers, however, the Products all share common ingredients that belie their "100% Juice" representations: citric acid and/or ascorbic acid—two well-documented synthetic ingredients.

3. A sample size of Defendant's most recent labeling of its three Products' packaging, along with their respective ingredient lists, are depicted below:



**Front**



**Back**



**Ingredients:** Pears, White Grape Juice (Water, White Grape Juice Concentrate), Ascorbic Acid, Natural Flavor, Lemon Juice Concentrate.

**Front**  **Back**



**INGREDIENTS:** PINEAPPLE, PINEAPPLE JUICE, PINEAPPLE JUICE CONCENTRATE, ASCORBIC ACID, CITRIC ACID.

4. As a result of its deceptive conduct, Defendant is, and continues to be, unjustly enriched at the expense of its consumers.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

6. This Court also has personal jurisdiction over Defendant because it conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this State, including Plaintiff's purchases.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

## PARTIES

8. Plaintiff Tisha Franklin is a citizen of New York, who resides in Brooklyn, New York. Plaintiff Franklin purchased Defendant's Products for her personal use on various occasions within the applicable statute of limitations, with her most recent purchase of Defendant's canned "100% Juice Pineapple Chunks" taking place on or about September of 2023. Plaintiff Franklin made these purchases from local grocery stores. Prior to making her purchases, Plaintiff Franklin saw that the Products were labeled and marketed as being contained in "100% Juice." Plaintiff Franklin relied on Defendant's representations when she decided to

purchase the Products over comparable products that did not make those claims. Plaintiff Franklin saw Defendant's representations prior to and at the time of her purchases and understood them as a representation and warranty that the Products were exclusively contained in "100% Juice." Plaintiff Franklin relied on these representations and warranties in deciding to purchase the Products. Accordingly, those representations and warranties were part of the basis of her bargains, in that she would not have purchased the Products on the same terms had she known that those representations were not true. Furthermore, in making her purchases, Plaintiff Franklin paid a substantial price premium due to Defendant's false and misleading representations concerning the Products. Plaintiff Franklin, however, did not receive the benefit of her bargains because those representations were not, in fact, true.

9. Defendant Del Monte Foods, Inc. is a Delaware corporation with its principal place of business located in Walnut Creek, California. Defendant manufacturers, packages, labels, advertises, markets, distributes and/or sells the Products in New York and throughout the United States.

## GENERAL ALLEGATIONS

*Overview of Defendant's Deceptive Business Practices*

10. The global juice market has experienced a significant burst of growth as health-oriented consumers have turned to natural juices due to their rich nutritional content: which includes essential vitamins, minerals, and antioxidants. These perceived health benefits, along with the increasing aversion toward synthetic ingredients, have made fruit juices top contenders in the beverage industry.[2] Indeed, recent consumer surveys indicate that approximately "half of

---

[2] IMARC, *Fruit Juice Market Report by Product Type (100% Fruit Juice, Nectars, Juice Drinks, Concentrates, Powdered Juice, and Others), Flavor (Orange, Apple, Mango, Mixed Fruit, and Others), Distribution Channel (Supermarkets and Hypermarkets, Convenience Stores, Specialty*

Americans say they seek out natural flavors at least some of the time," with most of these respondents looking for products that are "not artificial or synthetic."[3] In fact, the second largest contributing factor toward consumer confidence regarding the safety of food is that it be labeled as "Having No Artificial Ingredients."[4]

11. In response to this rise in consumer demand, food and beverage manufacturers pivoted by producing fruit juices *en masse*. Despite this, however, many of these so-called "fruit juices" are merely a hoax—containing the same plethora of synthetic ingredients as previous food and beverage products. Defendant's Products falls squarely within this gamut of deceptive conduct.

12. By labeling its Products as contained in "100% Juice," Defendant deliberately attempts to distinguish itself from other fruit juices containing additional synthetic ingredients or preservatives. As discussed in greater depth below, however, Defendant's Products are not contained in "100% Juice." Instead, they contain "ascorbic acid" and "citric acid"—two well-known synthetic non-juice food additives.

*Overview of Citric Acid and Ascorbic Acid*

13. Citric acid is a popular food additive in the beverage industry due to its preservative functions. Although citric acid is naturally occurring when derived from citrus fruits, producing natural citric acid on an industrial level is prohibitively expensive. As such,

---

*Food Stores, Online Retail, and Others), and Region 2023-2028*, https://www.imarcgroup.com/fruit-juice-manufacturing-plant (last accessed November 29, 2023).
[3] International Food Information Council, *IFIC Survey: From "Chemical-sounding" to "Clean": Consumer Perspectives on Food Ingredients* (June 17, 2021), https://foodinsight.org/ific-survey-from-chemical-sounding-to-clean-consumer-perspectives-on-food-ingredients/ (last accessed November 29, 2023).
[4] International Food Information Council, *2023 Food & Health Survey* (May 23, 2023) at 73, https://foodinsight.org/2023-food-and-health-survey/ (last accessed October 6, 2023).

most citric acid is commercially produced, and manufactured, through extensive chemical processing.[5] In fact, more than 90 percent of commercially produced citric acid, is manufactured through a processed derivative of black mold, *Aspergillus niger*, which can cause allergic reactions and diseases in humans.[6]

14. Citric acid functions in beverages as a preservative by serving as an acidulant and as an indirect antioxidant. Citric acid infiltrates and weakens or kills microorganisms through direct antimicrobial effect, lowering a juice product's pH level, thereby combatting and sequestering microorganisms. Citric acid serves these functions regardless of whether it is also being added as a flavoring agent.[7] Industry participants also recognize that citric acid functions as a preservative. For example, one food additives supplier states: "Citric acid is the most commonly used acidulant in the industry. As a food additive or food-grade product, citric acid is used as a flavoring and preservative. The buffering properties of citrates are used to control pH and flavor."[8]

15. Ascorbic acid (also known as Vitamin C) is another popular food additive commonly used in beverages due to its preserving qualities. Although ascorbic acid (like citric

---

[5] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/ (last accessed November 29, 2023).

[6] *Id.*; I. Sweis & B. Cressey, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for four case reports*, 5 TOXICOLOGY REPS., 808-12 (2018); R. Ciriminna et al., *Citric Acid: Emerging Applications of Key Biotechnology Industrial Product*, 11 CHEMISTRY CENT. J. 22 (2017), https://doi.org/10.1186/s13065-017-0251-y (last accessed October 6, 2023); K. Kirimura, Y. Honda, & T. Hattori, *Citric Acid*, 3 COMPREHENSIVE BIOTECHNOLOGY 135 (2011), https://www.sciencedirect.com/science/article/pii/B9780080885049001690 (last accessed November 29, 2023).

[7] Deman, John M. "Acids as food additives serve a dual purpose, as acidulants and as preservatives." *Principles of food chemistry.* AVI Publishing Co., Inc., 1999, p. 438.

[8] FBC Industries, Inc., *Citrates*, https://fbcindustries.com/citrates/ (last accessed November 29, 2023).

acid) can also be produced from natural sources, doing so is prohibitively expensive for companies that require the ingredient in large quantities.[9] As such, most ascorbic acid is commercially produced, and manufactured, through extensive chemical processing.[10] In fact, the United States Department of Agriculture ("USDA") found that "all commercial ascorbic acid [is] synthetically derived."[11] The reason for this is that, "[w]hile ascorbic acid is naturally produced … its reactive nature makes isolation of the substance from natural sources challenging, which has resulted in all commercial ascorbic acid being synthetically derived."[12]

16. Ascorbic acid functions as an antioxidant that helps prevent microbial growth and oxidation in food products, thereby preserving their color and freshness.

17. Due to their strong chemical properties, both citric acid and ascorbic acid can function as a preservative even when used only in trace amounts.[13] In fact, the Food and Drug Administration ("FDA") lists "ascorbic acid" under the heading "Subpart D - Chemical Preservatives." 21 C.F.R. § 182.3013. Furthermore, the FDA classifies and identifies citric acid and ascorbic acid as preservatives in its Overview of Food Ingredients, Additives, and Colors, on its website and provides examples of how citric acid is used as a preservative in beverages.[14]

18. The FDA's view of this matter is further bolstered by a Warning Letter that it sent

---

[9] Dolchem Quality Chemicals, *Ascorbic Acid Journey: From Production to Applications*, available at: https://www.dolchem.com/blog/ascorbic-acid-journey-from-production-to-applications/ (last accessed November 29, 2023).
[10] *Id.*
[11] U.S. Dep't of Agric., USDA National Organic Program, *Ascorbic Acid* 3 (2019), https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf (last accessed November 29).
[12] *Id.*
[13] Doores, S., 1993. *Organic acids*. In: Davidson, P.M., et al. (Eds.), *Antimicrobials in Food* CRC Press, pp. 95-136, http://base.dnsgb.com.ua/files/book/Agriculture/Foods/Antimicrobials-in-Food.pdf (last accessed last accessed November 29, 2023).
[14] https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors (last accessed November 29, 2023).

to Chiquita Brands International, Inc., indicating that Chiquita's "Pineapple Bites" products were misbranded within the meaning of section 403(k) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 343(k), because "they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions."[15]

***Defendant's Failure to Abide by the FDA's Regulatory Framework***

19. The FDA specifically regulates the use of ascorbic acid for the exact fruit products that Defendant manufactures. Although these regulations permit ascorbic acid to be added to canned fruit products,[16] they do not otherwise allow Defendant to make the "100% Juice" declarations. In fact, the FDA requires canned fruits, like the Products, to use the "names of the juices in the order of predominance" followed by the words "from concentrate(s)," on their front label when such products contain two or more juices, including from concentrate. *See* 21 C.F.R. §§ 145.135(a)(4)(ii)(b),(c); 21 C.F.R. §§ 145.175 (a)(4)(ii)(b),(c); 21 C.F.R. §§ 145.170(a)(h)(4)(ii)(b),(c).

20. To make matters worse, Defendant's "100% Juice" misrepresentations also run afoul of pertinent FDA regulations applicable to juices. Specifically, the FDA provides that:

> "If the beverage contains 100 percent juice and also contains non-juice ingredients… [and] the 100 percent juice declaration appears on a panel of the label that does not also bear the ingredient statement, it must be accompanied by the phrase "with added — — — — — ," the blank filled in with a term such as

---

[15] FDA, *Warning Letter to Chiquita Brands International, Inc. and Fresh Express Incorporated* (Oct. 6, 2010), available at https://wayback.archiveit.org/7993/20170112194314/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2010/ucm228663.htm (last accessed November 29, 2023).

[16] *See* 21 C.F.R. § 145.135(a)(1)(iv) (permitting ascorbic acid to be used in "Canned fruit cocktail" in order "to preserve color."); 21 C.F.R. § 145.135(a)(1)(vi) (permitting ascorbic acid to be used in "Canned peaches" in order "to preserve color."). Based on this framework, it is hardly surprising that all of Defendant's Products openly declare that they contain "Ascorbic Acid (Vitamin C) To Protect Color." *See supra*, ¶ 3.

9

"ingredient(s)," "preservative," or "sweetener," as appropriate (e.g., "100% juice with added sweetener")[.]"  21 C.F.R. § 101.30(b)(3).

21. Defendant's Products fail to comply with this FDA regulation—thus giving the erroneous impression that the Products are essentially 100% drinkable juice beverages (with added fruits). Consumers are accustomed to purchasing properly labeled juices. As such, since Defendant fails to disclose that its Products in "100% Juice" also contain added ingredients—as required under the FDA—they are further misled into believing that the Products do not contain any non-juice ingredients. Although Plaintiff does not seek to enforce the FDA, Defendant's non-compliance illustrates its misconduct.

22. The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[17] Based on the foregoing, consumers are willing to purchase and pay a premium for healthy and clean food items: like the deceptively advertised Products.

23. Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3). Specifically, the Classes are defined as:

25. **Nationwide Class:** All persons in the United States who, during the maximum

---

[17] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025*, https://www.hospitalitynet.org/news/4108643.html (last accessed November 29, 2023).

period of time permitted by law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

26. **New York Subclass:** All persons residing in New York who, during the maximum period of time permitted by the law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

27. The Classes do not include (1) Defendant, its officers, and/or its directors; or (2) the Judge to whom this case is assigned and the Judge's staff.

28. Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

29. *Community of Interest*: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

30. *Numerosity*: While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. Members of the Classes may also be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

31. *Existence and predominance of common questions of law and fact*: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

(a) Whether the marketing, advertising, packaging, labeling, and other promotional

materials for the Products are deceptive;

  (b) Whether Defendant fraudulently induced Plaintiff and the members of the Classes into purchasing the Products;

  (c) Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof;

  (d) Whether Plaintiff and the members of the Classes are entitled to statutory damages; and

  (e) Whether Plaintiff and the members of the Classes are entitled to attorney's fees and costs.

  32. ***Typicality:*** The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

  33. ***Adequacy***: Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Classes because she has no interests which are adverse to the interests of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained skilled and experienced counsel.

  34. Moreover, the proposed Classes can be maintained because they satisfy both Rule 23(a) and 23(b)(3) because questions of law or fact common to the Classes predominate over any questions affecting only individual members and a Class Action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)    The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

(b)    If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members of the Classes to seek to redress their claims other than through the procedure of a class action; and

(c)    Absent a class action, Defendant likely will retain the benefits of its wrongdoing, and there would be a failure of justice.

## CAUSES OF ACTION

### COUNT I
**Violation of State Consumer Protection Statues[18]**
**(On Behalf of Plaintiff and the Nationwide Class)**

35.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

---

[18] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code §1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen Stat. Ann. § 42- 110, et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann.§ 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code. Ann. § 48-601, et seq.; 815 ILCS 501/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen Laws Ann. Ch. 93A, et seq.;  Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1- 5.2(B), et seq.; S.C. Code Ann. §§ 39-5- 10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Code Ann., Bus. & Con. § 17.41, et seq.; Utah Code. Ann. § 13-11-175, et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

36. The Consumer Protection Statutes of the Nationwide Class members prohibit the use of deceptive, unfair, and misleading business practices in the conduct of trade or commerce.

37. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by misrepresenting that the Products are contained in "100% Juice." Despite those representations, however, the Products contain "ascorbic acid" and/or "citric acid"—two non-juice synthetic preservatives.

38. The foregoing deceptive acts and practices were directed at consumers.

39. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

40. As a result of Defendant's deceptive practices, Plaintiff and the Nationwide Class members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

41. On behalf of herself and the Nationwide Class members, Plaintiff seeks to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT II
### Violation of New York G.B.L. § 349
**(On Behalf of Plaintiff and the New York Subclass)**

42. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

43. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

44. In its sale of Products throughout the state of New York, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of New

York's General Business Law § 349.

45. Plaintiff and the New York Subclass members are consumers who purchased the Products from Defendant for their personal use.

46. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by representing that the Products are contained in "100% Juice." Despite those representations, however, the Products contain "ascorbic acid" and/or "citric acid"— two non-juice synthetic preservatives.

47. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

48. As a result of Defendant's deceptive practices, Plaintiff and the New York Subclass members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

49. On behalf of herself and the New York Subclass members, Plaintiff seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT III
### Violation of New York G.B.L. §350
### (On Behalf of Plaintiff and the New York Subclass)

50. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

51. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

52. Defendant violated New York General Business Law § 350 by representing on the packaging of the Products that the Products are contained in "100% Juice." Despite those representations, however, the Products contain "ascorbic acid" and/or "citric acid"— two non-

15

juice synthetic preservatives.

53. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

54. Defendant's misrepresentations have resulted in consumer injury or harm to the public interest.

55. As a result of Defendant's false advertising, Plaintiff and the New York Subclass members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

56. On behalf of herself and the New York Subclass members, Plaintiff seeks to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Classes; and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c) For compensatory, statutory and punitive damages in amounts to be determined by the Court and/or jury;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief; and

(f) For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: November 29, 2023

Respectfully submitted,

**GUCOVSCHI ROZENSHTEYN, PLLC**

By: /s/ Adrian Gucovschi
    Adrian Gucovschi, Esq.

Adrian Gucovschi
140 Broadway, Suite 4667
New York, NY 10005
Tel: (212) 884-4230
adrian@gr-firm.com

*Counsel for Plaintiff and the Classes*